M. DANTON RICHARDSON (State Bar No. 141709)
[dantonlaw@yahoo.com]
LAW OFFICES OF M. DANTON RICHARDSON
131 N. El Molino Avenue, Suite 310
Pasadena, CA  91101
Telephone: (949) 677-6434

Attorneys for Plaintiffs
XIAOYAN ZHOU and HUI CAO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIAOYAN ZHOU, an individual; HUI CAO, an individual;<br><br>            Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, a national banking association; JPMORGAN CHASE BANK, N.A., a national banking association; TRILOGY ESCROW, INC., a California corporation; JANELLE COWAN, an individual; NAVIGATORS REAL ESTATE, INC. dba PINNACLE REAL ESTATE GROUP, a California corporation; MUZI ZHOU, an individual; and DOES 1-20, inclusive,<br><br>            Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>1) **NEGLIGENCE;**<br><br>2) **BREACH OF CONTRACT AND/OR IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>3) **FRAUD/INTENTIONAL MISREPRESENTATIONS;**<br><br>4) **NEGLIGENT MISREPRESENTATIONS;**<br><br>5) **BREACH OF FIDUCIARY DUTY;**<br><br>6) **CONVERSION;**<br><br>7) **MONEY HAD AND RECEIVED;**<br><br>8) **VIOLATION OF CAL. BUS. AND PROF. CODE, SECTION 17200, ET SEQ.;**<br><br>9) **VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT; AND**<br><br>10) **AIDING AND ABETTING**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs XIAOYAN ZHOU, an individual, and HUI CAO, an individual, hereby complain and bring this complaint against BANK OF AMERICA, NATIONAL ASSOCIATION, a national banking association, JPMORGAN CHASE BANK, N.A., a national banking association; TRILOGY ESCROW, INC., a California corporation; JANELLE COWAN, an individual; NAVIGATORS REAL ESTATE, INC. dba PINNACLE REAL ESTATE GROUP, a California corporation; MUZI ZHOU, an individual; and DOES 1-20, inclusive. Plaintiffs allege the following on information and belief, except for those allegations relating to Plaintiffs, which are alleged on personal knowledge.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## THE PARTIES

3.      At all relevant times mentioned herein, Plaintiffs XIAOYAN ZHOU ("Ms. Zhou") and HUI CAO ("Mr. Cao") (hereinafter collectively "Plaintiffs") were and are individuals who are foreign nationals.

4.      At all relevant times mentioned herein, Defendant BANK OF AMERICA, NATIONAL ASSOCIATION, was and is a national banking association organized under the laws of the United States with its principal place of business in Charlotte, North Carolina (hereinafter "BoA"). BoA regularly conducts business within this judicial district.

5.      At all relevant times mentioned herein, Defendant JPMORGAN CHASE BANK, N.A., was and is a national banking association organized under the laws of the United States with its principal place of business in Columbus, Ohio (hereinafter "Chase"). Chase regularly conducts business within this judicial district.

6.  At all relevant times mentioned herein, Defendant TRILOGY ESCROW, INC. (hereinafter "TRILOGY ESCROW") was and is a California corporation providing escrow services for real estate transactions. The office of TRILOGY ESCROW involved in the subject transactions is/were located at 7965 Vineyard Avenue, #F2, Rancho Cucamonga, California 91730 and 18565 Yorba Linda Blvd., Suite A, Yorba Linda, California 92886.

7.  At all relevant times mentioned herein, Defendant JANELLE COWAN (hereinafter "Ms. Cowan") was an individual and the Escrow Officer at TRILOGY ESCROW.

8.  At all relevant times mentioned herein, Defendant NAVIGATORS REAL ESTATE, INC. dba PINNACLE REAL ESTATE GROUP (hereinafter "PINNACLE") was and is a California corporation doing business as a real estate company. The office of PINNACLE involved in the subject transactions is located at 2633 South Baldwin Avenue, Arcadia, California, 91007 and 17426 Colima Road, ROWLAND HEIGHTS, CA, 91748.

9.  At all relevant times mentioned herein, Defendant MUZI ZHOU (hereinafter "Muzi Zhou") was an individual and a real estate agent at PINNACLE. There is no relation between Plaintiff Ms. Zhou and Defendant Muzi Zhou.

10.  Defendants DOES 1 through 20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately and legally caused by those Defendants. Each reference in this Complaint to "Defendant," "Defendants," or specifically named Defendants refers to all named Defendants and those sued under fictitious names.

11.  Plaintiffs do not know the true names or capacities, whether individual, corporate, associate or otherwise, of other potential defendants. If and when Plaintiffs learn the true names and identities of additional defendants, Plaintiffs will amend the Complaint and, where needed, will seek leave of this Court for permission to amend this Complaint.

12.    Plaintiffs are informed and believe, and on that basis allege, that each of the unknown Defendants is responsible in some manner for the occurrences alleged herein and same were legally caused by the negligence, actions, inactions, omissions, contributions, or otherwise, of the unknown Defendants and the unknown Defendants are thus liable in some manner to Plaintiffs for the damages claimed.

13.    Plaintiffs are informed and believe, and on that basis allege, that at all relevant times, Defendants, and each of them, were the principal, agent, servant, employee, co-conspirator, alter ego, joint venturer, shareholder, investor, independent contractor, and/or designated representative of the remaining defendants, including Defendants, and each of them, and in doing the things alleged were acting within the course and scope of their agency, agreement, employment, conspiracy, joint ventureship and/or alter ego relationship, and in furtherance of this agency, agreement, employment, conspiracy, joint ventureship and/or alter ego relationship, and with the full knowledge, approval, agreement, permission, consent, ratification, either express or implied, of each of the remaining defendants, including Defendants, and each of them.

14.    Plaintiffs are informed and believe, and on that basis alleges, that at all relevant times, Defendants, and each of them, knowingly conspired, joined, and participated with each other in the conduct alleged and that each Defendant is, therefore, liable with each other Defendant for the conduct alleged and for the relief being sought.

## GENERAL FACTS RELEVANT TO ALL CAUSES OF ACTION

15.    On or about March 1, 2024, Plaintiffs as the buyers and the THE BASHARA FAMILY TRUST (hereinafter "TRUST") as the seller, entered into a California Residential Purchase Agreement and Joint Escrow Instructions (the "Purchase Agreement") for the purchase of the real property located at 18125 Hutchings Drive, Yorba Linda, CA 92886 (the "Property"), a true and correct copy of which is attached hereto and marked as ***Exhibit "A"*** and incorporated herein by this reference.

16.    Plaintiffs agreed to purchase the Property from the seller TRUST for a total purchase price of $2,218,888.00.

17.     Between approximately March 1, 2024, through May 30, 2024, Plaintiffs engaged in a series of communications with the various Defendants described herein, regarding the purchase of the Subject Property. During those communications, one or more pieces of information pertaining to Plaintiffs, their payment sources for the Subject Property, and information pertaining to other Defendants were entrusted to Defendants, and each of them, based upon a relationship of trust and confidence that gave rise to fiduciary obligations. As a result, during that time period Defendants possessed information relating to Plaintiffs and the transaction that could be used to impersonate one or more of the other Defendants, and/or to otherwise wrongly manipulate Plaintiffs.

18.     On information and belief, at some point in time unknown to Plaintiffs, Defendants, and each of them, committed negligent acts as described below, in that Plaintiffs are informed and believe, and thereon allege that Defendants, and each of them, mishandled confidential information pertaining to Plaintiffs, the source of funds for the purchase of the Subject Property, the parties' transaction, and/or one or more of the other Defendants. As a result, Plaintiffs were placed in considerable personal risk, which actually resulted in the theft of Plaintiffs' money as described below.

19.     Based on the Purchase Agreement and the parties' agreements, Plaintiffs caused to be deposited with the TRILOGY ESCROW $545,691.64 in funds to a CommerceWest Account as follows:

| Date | Amount | Source | To |
|------|--------|--------|-----|
| 3/5/2024 | $ 66,566.64 | BOA | CommerceWest |
| 5/21/2024 | $ 99,083.00 | overseas | CommerceWest |
| 5/28/2024 | $380,000.00 | Chase | CommerceWest |

20.     Plaintiffs are informed and believe and based thereon allege that just prior to the scheduled closing, however, Plaintiffs' buyers' agent, Muzi Zhou, of PINNACLE, received new instructions from TRILOGY ESCROW providing new banking information for the wire transfer of the balance of the funds. These new instructions were sent from Ms. Cowan's TRILOGY

COMPLAINT

ESCROW email account to Muzi Zhou and were then passed along by Muzi Zhou and PINNACLE to Plaintiff Ms. Zhou via WeChat.

21.    On or about May 29, 2024, Plaintiff Ms. Zhou reached out to her buyers' real estate agent, Muzi Zhou, to question whether the instructions were legitimate and to confirm whether Plaintiffs should comply with these new instructions. Muzi Zhou confirmed that she had verified the instructions with TRILOGY ESCROW, and that Plaintiffs should send the funds representing the balance of the purchase price for the Property to that new account – an account at BoA – as soon as possible.

22.    Plaintiffs then caused the balance of the funds in the amount of $1,689,001.00 to be wired as follows per such instructions:

| Date | Amount | Source | To |
|------|--------|--------|-----|
| 5/29/2024 | $789,000.00 | BOA | BOA |
| 5/30/2024 | $450,000.00 | Chase | BOA |
| 5/31/2024 | $450,001.00 | Chase | BOA |

23.    The funds sent through BoA were sent by Plaintiffs through BoA's branch located at 6519 Quail Hill Parkway, Irvine, California. The funds sent from Chase, however, were sent to BoA on behalf of Plaintiffs by Xinghan Group, LLC ("Xinghan"), with Plaintiffs' reimbursing Xinghan the amount of such funds together with an added fee for Xinghan's services.

24.    Unfortunately, at the time of closing on June 3, 2024, Ms. Cowan and TRILOGY ESCROW claimed TRILOGY ESCROW had never received the balance of the purchase price. On information and belief, Plaintiffs understand and believe and thereon allege that it was eventually determined that the email providing the new instructions came from Ms. Cowan's email account. However, Ms. Cowan and TRILOGY ESCROW have claimed such email was unauthorized.

25.    Ms. Cowan and TRILOGY ESCROW have also advised that they have checked and have confirmed that TRILOGY ESCROW's email system had not been hacked, so the sending of the fraudulent email appears to have been "an inside job" by someone who had access to such an account.

26.     Upon learning this information, Plaintiffs immediately contacted BoA on June 3, 2024, to seek the return of the funds wired through BoA. BoA was able to retrieve $497,467.00 of the wired funds, but BoA has advised Plaintiffs that is all BoA could recover, meaning $291,533.00 is still lost to whoever committed this wire fraud.

27.     Plaintiffs also requested Xinghan to contact Chase regarding the funds sent through Chase. Plaintiffs are informed and believe and based thereon allege that Xinghan immediately contacted Chase on June 3, 2024, about the fraudulent wire recipient and later submitted documentation requested by Chase to investigate the matter. It is unclear what has happened with the funds transferred through Chase. At one point, Plaintiffs were advised that Chase had been able to put a freeze on the $900,001 sent through Chase, but that BoA was not releasing the funds to Chase.  To date, the funds sent through Chase have not yet been returned to Plaintiffs.

28.     On or about June 18, 2024, the TRUST's agent issued a 3-day Demand to close escrow, a true and correct copy of which is attached hereto and marked as ***Exhibit "B"*** and incorporated herein by this reference.

29.     Plaintiffs immediately retained a counsel who responded to the TRUST seller's agent's Demand, advising that the Buyers were prepared to close and must insist that the title be transferred to the Buyers as agreed pursuant to the Residential Purchase Agreement dated March 1, 2024. However, Plaintiffs were again advised that some of the funds were not received by escrow, and in spite of Plaintiffs efforts through the transferring banks to re-call those funds, Plaintiffs have only been able to retrieve the sum of $497,467.00.

30.     Plaintiffs advised that buyers were prepared to re-tender this amount to Escrow provided Seller would confirm Seller was prepared to and will transfer title to the Buyers upon the deposit of such funds. A true and correct copy of Plaintiffs' letter dated June 21, 2024, is attached hereto and marked as ***Exhibit "C"*** and incorporated herein by this reference.

31.     Rather than respond to Plaintiffs' letter, the TRUST's seller's agent issued another 3-day Demand to close escrow. Thereafter, various discussions occurred between Plaintiffs' counsel and the TRUST's seller's agent which ultimately led to Plaintiffs agreeing to allow the TRUST to cancel escrow provided Plaintiffs would receive the return of the entirety of Plaintiffs'

buyers' escrow deposit actually received by Trilogy Escrow. A true and correct copy of the "Cancellation of Contract, Release of Deposit and Cancellation of Escrow" together with the "ADDENDUM" to thereto is attached hereto and marked as **Exhibit "D"** and incorporated herein by this reference. The Addendum was signed by both the seller and buyers, but Plaintiffs' buyer's agent failed to sign or otherwise respond to communications as to same.

32.    Plaintiffs ultimately agreed to allow the TRUST to cancel the escrow so as to not tie up the property and penalize the TRUST by further delaying the sale of the subject property. Notably, said Addendum expressly provides that:

> The parties signing this Addendum acknowledge and agree that BUYERS signing of the Cancellation Form and agreeing to cancel the subject transaction is without prejudice and shall not constitute a waiver of any of BUYERS' rights, other than as provided in the Cancellation Form between SELLER and BUYERS, and that BUYERS are expressly reserving any and all other rights including the right to pursue the missing funds and any parties responsible for such loss.

33.    Plaintiffs are informed and believe and based thereon allege that certain unknown parties, aided by other unknown parties, each sued herein as Doe Defendants (hereafter collectively referred to as the "WIRE FRAUD DEFENDANTS"), fraudulently set up the "Darby Law Firm Escrow" account at BoA for the purpose of defrauding innocent victims such as Plaintiffs.

34.    Plaintiffs are further informed and believe and based thereon allege that the WIRE FRAUD DEFENDANTS caused the email with the false and fraudulent wire instructions to be sent through Ms. Cowan and TRILOGY ESCROW's email for the purpose of fraudulently misdirecting funds into the fraudulent "Darby Law Firm Escrow" account for the purpose of defrauding Plaintiffs.

35.    On information and belief, at some point in time unknown to Plaintiffs, one or more of the WIRE FRAUD DEFENDANTS, in coordination with one or more other WIRE FRAUD DEFENDANTS and/or one or more other Defendants, wrongfully, intentionally and maliciously obtained personal, confidential information belonging to Plaintiffs, relating to the subject property sale transaction, that had been entrusted to the Defendants (and/or other WIRE FRAUD DEFENDANTS). The WIRE FRAUD DEFENDANTS were able to achieve this

data breach and engage in theft, conversion, fraud, and cause other harms to the Plaintiffs as a result of the negligence by Defendants, and each of them, who breached their duties of care owed to the Plaintiffs.

36.    On information and belief, certain WIRE FRAUD DEFENDANTS aided and abetted other WIRE FRAUD DEFENDANTS, because those WIRE FRAUD DEFENDANTS, and each of them, with knowledge, offered substantial assistance to the other WIRE FRAUD DEFENDANTS, intending to facilitate the wrongful conduct, and the aiding and abetting was a substantial factor in harming Plaintiffs. On information and belief, certain WIRE FRAUD DEFENDANTS conspired, acted in concert and came to a mutual understanding with certain other WIRE FRAUD DEFENDANTS to harm Plaintiffs, which plan in fact harmed the Plaintiffs.

37.    Said malicious WIRE FRAUD DEFENDANTS intentionally and maliciously, facilitated or accomplished a data security breach, obtained and used Plaintiffs' confidential and personal information to obtain unsecured data that had been entrusted to the Defendants and/or converted money from Plaintiffs using identity theft, illegally-obtained data, trickery, false pretenses, and/or forgery to obtain funds belonging to the Plaintiffs in the amount of $1,191,534.00, which funds Plaintiffs were led to believe were to be applied to the purchase price for the Subject Property. However, said funds belonging to the Plaintiffs were stolen by the WIRE FRAUD DEFENDANTS, who were, on information and belief, acting in concert and coordination with one another, conspiring, and/or aiding and abetting other WIRE FRAUD DEFENDANTS. The exact extent and nature of the wrongful conduct by these Doe Defendants and/or persons acting on behalf of any or all of the foregoing is not fully known by Plaintiffs at this time. Plaintiffs' investigation and discovery is ongoing.

38.    Plaintiffs have subsequently learned that at all times described herein, there existed a widespread and growing problem of wire transfer fraud in the United States that was, or should have been, well known to Defendants who were real estate and banking professionals. Malicious persons are scamming individuals by posing as persons from whom the victims expect to receive wire transfer instructions, such as escrow agents, real estate agents, and others. The problem is commonplace and well-known to escrow and real estate agents, and to banks, but not as well

known to the general public. The broker's duty of care, skill, and diligence can be breached through the broker's own conduct, or that of a salesperson or associated broker retained by the broker, such as by failing to perform the necessary research and investigation to acquire reasonably obtainable important information that will affect the principal's decision. Here, by failing to reasonably investigate, protect and advise Plaintiffs, defendants PINNACLE and Muzi Zhou breached their fiduciary duties and duties of care to the Plaintiffs by failing to perform the necessary research and investigation to acquire reasonably obtainable important information that would have impacted the Plaintiffs' decisions.

39.    Plaintiffs are informed and believe, and thereon allege that Defendants, and each of them, excepting the WIRE FRAUD DEFENDANTS, at all times after their relationships to Plaintiffs were created, negligently failed to secure Plaintiffs' personal and private financial and other data, and as to the BANKS, and each of them, negligently failed to take appropriate remedial action after having been informed of the fraudulent wire transfers, and that PLAINTIFFS' ESCROW and REAL ESTATE AGENTS, and each of them, were further negligent in failure to take adequate security measure relating to their email communications. Plaintiffs are informed and believe, and thereon allege that the negligence of Defendants, and each of them, excepting the WIRE FRAUD DEFENDANTS, proximately caused, in whole, or in part, Plaintiffs' damages, including the loss of funds to the WIRE FRAUD DEFENDANTS.

40.    On information and belief Plaintiffs' ESCROW and REAL ESTATE AGENTS were negligent, or worse, in failing to secure computer accounts and logons and caused a data breach or other wrongdoing to be investigated through discovery leading to the events that harmed the Plaintiffs, or said Defendants, or agents or employees of such Defendants, acted intentionally to conspire with, aid and abet the WIRE FRAUD DEFENDANTS.

41.    Through no fault of their own, as a result of Defendants' fraud, breaches, negligence and misrepresentations as described herein, Plaintiffs have suffered significant damages, including but not limited to the loss of the missing funds, together with interest thereon, as well as the loss of the home Plaintiffs were under contract to purchase, all in an amount to be proved at trial.

# FIRST CAUSE OF ACTION

## NEGLIGENCE

**(Plaintiffs against BANK OF AMERICA, CHASE, TRILOGY ESCROW, MS. COWAN, PINNACLE, MUZI ZHOU, and DOES 1-20, inclusive)**

42.     Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

43.     "To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiffs damages or injuries. [Citation omitted.] Whether a duty of care exists is a question of law to be determined on a case-by-case basis. [Citation omitted.]" (*Luceras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.)

44.     "Some of the considerations that courts have employed in various contexts to determine the existence and scope of duty are: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent or the burden on the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Parsons v. Crown Disposal Co.* ( 1997) 15 Cal.4th 456, 472-73.).

45.     BoA had a duty to verify the identity of parties opening banking facilities with BoA and to not allow its banking facilities and services to be used by individuals using a fake business name to engage in fraudulent activities.  Plaintiffs are informed and believe and thereon allege that in opening an account for "Darby Law Firm Escrow," Defendant BoA failed to act in compliance with the customer identification program for banks ("CIP"), 31 C.F.R. 1020.2020, colloquially known as "Know Your Customer" regulations.  On information and belief, BoA in fact failed to take the necessary and reasonable steps to verify the identity of the receiving party involved in this

1   fraudulent scheme, the alleged "Darby Law Firm Escrow" account, and the individuals behind

2   such fraudulent account.

3       46.    Plaintiffs are further informed and believe and based thereon allege that BoA

4   further failed to take the necessary and reasonable steps to freeze or otherwise retrieve the subject

5   funds transferred into the so-called "Darby Law Firm Escrow" account once BoA learned of the

6   fraudulent transactions being perpetrated by the actual owners of such account.  BoA's failures

7   and breaches of duty substantially and proximately caused Plaintiffs' damages by allowing the

8   false and fraudulent "Darby Law Firm Escrow" account to be used to fraudulently receive the

9   funds transferred into such account and to thereafter dispose of such funds.  As such, BoA aided

10   and abetted the true owners of the Darby Law Firm Escrow account to defraud Plaintiffs.

11       47.    Plaintiffs are further informed and believe and based thereon allege that Chase

12   failed to timely take the necessary and reasonable steps to freeze or retrieve the subject funds

13   transferred by Chase into the so-called "Darby Law Firm Escrow" account once Chase learned of

14   the fraudulent transactions being perpetrated by the actual owners of such account.  Chase's

15   failures and breaches of duty substantially and proximately caused and/or contributed to Plaintiffs'

16   damages.

17       48.    TRILOGY ESCROW and Ms. Cowan, as an escrow agent, also owed Plaintiffs a

18   duty of care in that they had a duty to exercise ordinary care, skill, and diligence toward Plaintiffs.

19   "Generally, when escrow performs the parties' instructions, escrow is under the duty to exercise

20   ordinary care, skill, and diligence toward each of his or her principals." (*Amen v. Merced County*

21   *Title Co.* (1962) 58 Cal. 2d 528, 532.)

22       49.    TRILOGY ESCROW and Ms. Cowan breached that duty of care by failing to

23   secure Plaintiffs' personal information as well as TRILOGY ESCROW and Ms. Cowan's email

24   and allowing their email system to be used to send the email with fraudulent wiring instructions,

25   and their breach substantially and proximately caused and/or contributed to Plaintiffs' damages.

26       50.    TRILOGY ESCROW and Ms. Cowan failed to take all reasonable steps to secure

27   Ms. Cowan's email and to prevent its unauthorized use by third parties and their breach

28   substantially and proximately caused and/or contributed to Plaintiffs' damages. As a result of the

1    said breaches of duty by TRILOGY ESCROW and Ms. Cowan, Plaintiffs have suffered

2    significant damages.

3        51.    Further, PINNACLE and Muzi Zhou, as Plaintiffs' buyers' agent, also owed

4    Plaintiffs a duty of care in that they had to act in a way that was usual or necessary for the ordinary

5    or proper performance of their duty as a buyers' real estate agent. PINNACLE and Muzi Zhou had

6    a duty to confirm the validly of the new instructions with TRILOGY ESCROW and Ms. Cowan.

7    Instead, they negligently, if not knowingly, instructed Plaintiffs to follow the new instructions

8    contained in the email received from Ms. Cowan's email address without actually verifying the

9    authenticity of such instructions.

10        52.    PINNACLE and Muzi Zhou breached their duty of care, and their breach

11    substantially and proximately caused and/or contributed to Plaintiffs substantial damages. As a

12    result of the said breaches by PINNACLE and Muzi Zhou, Plaintiffs have suffered significant

13    damages.

14

15                    **SECOND CAUSE OF ACTION**

16            **BREACH OF CONTRACT AND/OR IMPLIED COVENANT**

17                **OF GOOD FAITH AND FAIR DEALING**

18    **(Plaintiffs against TRILOGY ESCROW, MS. COWAN, PINNACLE, MUZI ZHOU, and**

19                        **DOES 1-20, inclusive)**

20        53.    Plaintiffs re-allege and incorporate herein by reference all facts and allegations set

21    forth hereinabove, as if fully set forth herein.

22        54.    In every contract or agreement, there is an implied promise of good faith and fair

23    dealing. This implied promise means that each party will not do anything to unfairly interfere with

24    the right of any other party to receive the benefits of the contract. Good faith means honesty of

25    purpose without any intention to mislead or to take unfair advantage of another. Generally

26    speaking, it means being faithful to one's duty or obligation. Good faith performance of an

27    agreement emphasizes faithfulness to an agreed common purpose and consistency with the

28    reasonably justified expectations of the other party.

-12-

COMPLAINT

55.     "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Comunale v. Traders & General Ins. Co*. (1958) 50 Cal.2d 654, 658 [328 P.2d 198], internal citation omitted.)

56.     As set forth above, in or about March of 2024, Plaintiffs entered into an agreement with PINNACLE and Muzi Zhou to serve as Plaintiffs' buyer's broker/agent. Plaintiffs also entered into an agreement with the Seller's chosen escrow company, TRILOGY ESCROW and Ms. Cowan, for them to provide escrow services regarding the subject property sale.

57.     Pursuant to said agreement, PINNACLE and Muzi Zhou expressly and impliedly agreed to act reasonably and in good faith, as provided by the express terms of the "Disclosure Regarding Real State Agency Relationship", a true and correct copy of which is attached hereto and incorporated herein by this reference as ***Exhibit "E"*** as though fully set forth hereat.  As set forth therein, PINNACLE and Muzi Zhou expressly agreed to a "fiduciary duty of utmost care, integrity, honestly and loyalty in dealings with the Buyer."  PINNACLE and Muzi Zhou also expressly agreed to the "Diligent exercise of reasonable skill and care in performance of the agent's duties" and a "duty of honest and fair dealing and good faith."

58.     Plaintiffs are informed and believe, and thereon allege that by reason of the creation of said relationship between Plaintiff and the ESCROW and REAL ESTATE AGENTS, said defendants, and each of them, owed to Plaintiffs, and each of them. a duty to act reasonably, honestly, in good faith, and also owed to Plaintiffs, and each of them, a fiduciary duty.

59.     The REAL ESTATE AGENTS, and each of them, further undertook to act as the real estate broker and/or agents in relation to the purchase transaction that is the subject of this action and by reason of such undertaking owed a duty of due care to Plaintiffs, and each of them. The ESCROW AGENTS undertook similar obligations in agreeing to provide escrow services for the subject real estate purchase transaction.

60.     Plaintiffs are informed and believe, and based thereon allege that the ESCROW and REAL ESTATE AGENTS, and each of them, by reason of said agreements and relationships with Plaintiffs, owed the same duty as is owed by a trustee to a beneficiary, which includes a duty of

not only acting in the highest of good faith but precludes them from obtaining any advantage over Plaintiffs in any transaction by virtue of such agency. There is further a duty of full disclosure of all material facts concerning the transactions that might affect Plaintiffs' actions and decisions. Moreover, there is an implied covenant of good faith and fair dealing in every contract, including the agreements between Plaintiffs and the ESCROW and REAL ESTATE AGENTS.

61.    In committing the acts which are alleged hereinabove by incorporation, Plaintiffs' ESCROW and REAL ESTATE AGENTS, and each of them, breached the express and implied covenants of the written agreement. Plaintiffs are informed and believe, that in addition to the allegations which are hereinabove incorporated into this cause of action, the ESCROW and REAL STATE AGENTS negligently failed to adequately safeguard and protect their email systems, negligently permitted use of their email by either "insiders" or third parties so as to induce Plaintiffs to effect a wire transfer to a fraudulent account, failed to adequately protect from disclosure to third parties, such as the WIRE FRAUD DEFENDANTS, the details of the subject real property purchase and sale transaction, failed to adequately or reasonably communicate with Plaintiffs, failed to apprise Plaintiffs of the risk of wire fraud and misappropriation emanating from the use of wire transfers and the REAL ESTATE AGENTS falsely advised Plaintiffs that the false wire instructions apparently received from Ms. Cowen and TRILOGY ESCROW were, in fact, authentic and that Plaintiffs should immediately wire the balance of the funds required to purchase the Subject Property.

62.    As a direct and proximate result of the breach of the written contract and implied obligations thereof, Plaintiffs lost the sum of no less than $1,191,534.00, more specifically according to proof, plus interest thereon at the legal rate.

63.    Plaintiffs did all, or substantially all, of the significant obligations that the Purchase Agreement required Plaintiffs to do, except those which have been prevented because of the acts of the Defendants, including transferring all the funds to the escrow account pursuant to the instructions Plaintiffs were provided and as verified by Ms. Cowan and TRILOGY ESCROW.

64.    The foregoing parties violated their duties to act fairly and in good faith in their relations with Plaintiffs. In fact, Defendants did not act fairly and in good faith with Plaintiffs.

65.    Defendants' breach of their agreements with Plaintiffs as well as the implied covenant of good faith and fair dealing caused significant damages to Plaintiffs in an amount to be proved at trial.

**THIRD CAUSE OF ACTION**

**FRAUD/INTENTIONAL MISREPRESENTATIONS**

**(Plaintiffs against DOES 1-20, inclusive, and PINNACLE and MUZI ZHOU)**

66.    Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

67.    Plaintiffs are informed and believe and based thereon allege that one or more of the WIRE FRAUD DEFENDANTS made false and fraudulent representations to BoA in opening the "Darby Law Firm Escrow" fictitious account.

68.    Plaintiffs are informed and believe and based thereon allege that said WIRE FRAUD DEFENDANTS claimed such factual statements made to BoA were true when, in fact, they were not.

69.    Plaintiffs are informed and believe and based thereon allege that those same WIRE FRAUD DEFENDANTS, either alone or with the assistance of others, caused a false and fraudulent email to be sent which provided false wire instructions and thereby caused Plaintiffs' funds intended for the purchase of the Property to be mis-directed into the fraudulent "Darby Law Firm Escrow" account.

70.    The unknown WIRE FRAUD DEFENDANTS who sent and/or caused the false and fraudulent email to be sent knew the statements contained therein were not true when such email was sent.

71.    Plaintiffs are informed and believe and based thereon allege that PINNACLE and Muzi Zhou either knew the new escrow instructions were false when they advised Plaintiffs the new fraudulent instructions were authentic or acted recklessly and without regard to the truth in making such representations.

72.    The unknown WIRE FRAUD DEFENDANTS who sent and/or caused the false and fraudulent email to be sent intended that Plaintiffs rely on the false and fraudulent statements and wire instructions contained therein.

73.    PINNACLE and Muzi Zhou likewise intended that Plaintiffs rely on the false and fraudulent statements and wire instructions contained in the false and fraudulent email.

74.    Plaintiffs reasonably relied on the truth of the statements contained in the email sent with instructions to wire the balance of the purchase funds to the subject BoA account under the name "Darby Law Firm Escrow".

75.    Plaintiffs also reasonably relied on the truth of PINNACLE and Muzi Zhou's assurances that such instructions were authentic and Plaintiffs should immediately wire the balance of the purchase funds to the subject BoA account under the name "Darby Law Firm Escrow".

76.    Plaintiffs were substantially harmed based on their reliance on the false and fraudulent wire instructions and PINNACLE and Muzi Zhou's assurances that such instructions were authentic.  Plaintiffs' reliance on such instructions and representations were a substantial factor in causing Plaintiffs' harm.

77.    The unknown WIRE FRAUD DEFENDANTS behind the Darby Law Firm Escrow account and the false wire instructions, together with PINNACLE and Muzi Zhou which wrongfully confirmed the authenticity of such instructions, caused significant damages to Plaintiffs in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATIONS

### (Plaintiffs against DOES 1-20, inclusive, and PINNACLE and MUZI ZHOU)

78.    Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

79.     Plaintiffs are informed and believe and based thereon allege that PINNACLE and Muzi Zhou acted negligently when they advised Plaintiffs the new fraudulent wire instructions were authentic.

80.     PINNACLE and Muzi Zhou intended that Plaintiffs rely on their negligent statements to Plaintiffs that Plaintiffs should comply with the wire instructions contained in the false and fraudulent email.

81.     Plaintiffs also reasonably relied on the truth of PINNACLE and Muzi Zhou's assurances that such instructions were authentic and Plaintiffs should immediately wire the balance of the purchase funds to the subject BoA account under the name "Darby Law Firm Escrow".

82.     Plaintiffs were substantially harmed based on their reliance on PINNACLE and Muzi Zhou's negligent assurances that such instructions were authentic.  Plaintiffs' reliance on such instructions and representations were a substantial factor in causing Plaintiffs' harm.

83.     PINNACLE and Muzi Zhou's wrongful confirmation of the authenticity of such instructions caused significant damages to Plaintiffs in an amount to be proved at trial.

**FIFTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Plaintiffs against TRILOGY ESCROW, MS. COWAN, PINNACLE and MUZI ZHOU)**

84.     Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

85.     As is more particularly alleged hereinabove by incorporation, Plaintiffs are informed and believe, and thereon allege that the ESCROW and REAL ESTATE AGENTS, and each of them, owed to Plaintiffs, and each of them, a fiduciary duty.

86.     In committing the acts and omissions which are hereinabove alleged by incorporation, the ESCROW and REAL ESTATE AGENTS, and each of them, breached a fiduciary duty to Plaintiffs, and each of them. As a direct and proximate result of the breaches of fiduciary duty by Defendants, ESCROW and REAL ESTATE AGENTS, and each of them,

Plaintiffs lost the sum of no less than $1,191,534.00, plus interest thereon at the legal rate, plus other damages, all more specifically according to proof.

### SIXTH CAUSE OF ACTION

### CONVERSION

**(Plaintiffs against the WIRE FRAUD DOE DEFENDANTS)**

87.     Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

88.     The WIRE FRAUD DEFENDANTS, and each of them, obtained confidential financial and personal information from and about Plaintiffs under false pretenses.

89.     Plaintiffs, and each of them, are, and at all times herein mentioned were the owners of the sum of $1,191,534.00 (hereinafter the "MONEY") which was taken from Plaintiffs as a product of false pretenses and fraud perpetrated by the WIRE FRAUD DEFENDANTS, and each of them. Said sum was a specifically identifiable sum of money.

90.     As is more particularly alleged hereinabove by incorporation, the WIRE FRAUD DEFENDANTS, and each of them, misappropriated, converted and took the MONEY through false pretenses and fraud perpetrated on Plaintiffs, and by reason of which it was without the consent of Plaintiffs.

91.     The value of the MONEY is, and at all times herein mentioned was, $1,191,534.00.

92.     As a direct and proximate result of the conversion of the MONEY by the WIRE FRAUD DEFENDANTS, Plaintiffs, and each of them, lost the sum of $1,191,534.00, plus interest thereon at the legal rate, more specifically according to proof.

93.     The conduct of the WIRE FRAUD DOE DEFENDANTS was fraudulent, willful, wanton and intentional, designed and calculated to purposely deprive Plaintiffs of the funds needed for their escrow deposit and cause other damages and harm. On information and belief, each of the fraudulent, willful, wanton and intentional harms by each Wire Fraud Defendant was directed, authorized and/or ratified by the others in order to harm the Plaintiffs. Such conduct

justifies the imposition of exemplary and/or punitive damages, in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

## MONEY HAD AND RECEIVED

**(Plaintiffs against the WIRE FRAUD DOE DEFENDANTS)**

94.     Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

95.     Within the two years preceding the filing of the Complaint, at Orange County, California, the unknown WIRE FRAUD DEFENDANTS, and each of them, became indebted to Plaintiffs, and each of them, in the sum of $1,191,534.00 for money had and received by said Defendants for the use and benefit of Plaintiffs.

96.     Plaintiffs do not yet know the identities of the WIRE FRAUD DEFENDANTS and hereby demands the payment of said sum from said Defendants, but the WIRE FRAUD DEFENDANTS, and each of them, have failed and refused, and continue to refuse and fail to pay said sum, or any portion thereof, and there is presently due, owing and unpaid from the WIRE FRAUD DEFENDANTS to Plaintiffs, and each of them, the sum of $1,191,534.00 plus interest thereon at the legal rate from the date of the wire transfer, more specifically according to proof.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA BUSINESS AND

## PROFESSIONS CODE, SECTION 17200 ET SEQ.

**(Plaintiffs against ALL DEFENDANTS)**

97.     Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

98.     Section 17200, et seq., of California's Business and Professions Code, also known as California's Unfair Competition Law ("UCL"), prohibits any unlawful, unfair, deceptive, or

fraudulent business act or practice, also prohibits unfair, deceptive, untrue or misleading advertising. The "unlawful" prong of the UCL "borrows" violations of other laws, such as the violations set forth hereinabove. As a salient example of an additional source of law, the California Consumer Privacy Act of 2018 ("CCPA"), section 1798.l50(a)(l) provides a private right of action to "[a]ny consumer whose nonencrypted and nonredacted personal information…is subject to an unauthorized access and exfiltration, theft, or disclosure" resulting from a business failing to "implement and maintain reasonable security procedures and practices." Damages for violations of the CCPA include a statutory amount between $100 and $750 per consumer per incident or actual damages, whichever is greater, as well as injunctive or declaratory relief and any other relief the court deems proper. Similarly, the California Privacy Rights Act ("CPRA"), expands protections afforded under the CCPA and expands the definition of personal information to include email addresses with passwords or security questions and answers. The CCPA and CRPA include significant obligations to report data security breaches.

99.     For the reasons set forth hereinabove, Defendants, and each of them, engaged in unlawful, unfair, deceptive, and/or fraudulent acts, which are therefore in violation of Bus. & Prof. Code Section 17200, the CCPA, CRPA and other applicable law set forth hereinabove, for example, by:

a.  Failing to take reasonable steps to protect data privacy of the nonencrypted and nonredacted personal information of Plaintiffs and other similarly-situated individuals, failing to take reasonable steps to maintain the security of sensitive financial information and documentation of customers like Plaintiffs and other similarly-situated individuals, and selecting means and modes of communication that are inherently insecure which facilitated, aided and abetted activity by the WIRE FRAUD DEFENDANTS to steal sensitive financial information and funds from the Plaintiffs and other similarly-situated individuals;

b.  Failing to ensure Plaintiffs, as their clients and customers, received factually accurate information concerning escrow for the Subject Property, including, but not limited to, accurate wire transfer information;

COMPLAINT

     c.   Failing to take reasonable steps ensure the security of electronic means of communication with customers and clients like the Plaintiffs and similarly-situated individuals, resulting in increased risk of data breaches, fraud, forgery, identity theft, and conversion.

     d.   Failing to implement and maintain reasonable, industry-standard data security protocols to ensure the privacy of sensitive and confidential information belonging to clients and customers, like the Plaintiffs and other similarly-situated individuals resulting in increased risks of invasions of privacy and exposure of sensitive information including confidential financial information entrusted to Defendants.

     f.   Failing to timely report and take corrective action following a data security breach, the unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' personal information, as well as possible breaches involving the personal information of other, similarly-situated individuals, and failing to take steps to report the data breach(es) by the WIRE FRAUD DEFENDANTS as required by the CCPA and CRPA.

100.   Plaintiffs have suffered substantial injuries not only because they lost $1,191,534.00, but they also lost their privacy, their safety, their security, their identities, and their confidential information is in the hands of criminals. Plaintiffs' injuries are so vast that they far outweigh the defendant's cost of having cybersecurity. Plaintiffs could not have reasonably avoided this injury because they had no clue that the defendants, in whom they placed their trust, did not safeguard their confidential information. Plaintiffs are informed and believe, and thereon allege that by reason of the violations of Business and Professions Code, Section 17200 et seq., as alleged hereinabove by incorporation, Defendants, and each of them, received a monetary benefit at the expense of Plaintiffs, in a sum according to proof. Plaintiffs are further informed and believe, and thereon allege that Defendants, and each of them, have threatened to, and will continue to commit the acts alleged hereinabove by incorporation, unless and until they are restrained and enjoined from doing so.

101.    Plaintiffs are informed and believe, and thereon allege that Plaintiffs are entitled to recovery of Plaintiffs' actual damages, restitution and an injunction to prevent further acts of unfair business competition and an order of restitution disgorging any profits earned by such conduct.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT

## (15 USC §1693, et seq., and Cal. Com. Code § 11101, *et seq.*)

### (Plaintiffs against BANK OF AMERICA)

102.    Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

103.    At all times herein mentioned, Plaintiffs maintained a consumer account with defendant BoA. Said account was subject to the Electronic Fund Transfer Act (EFTA) codified by 15 USC §1693, et seq., and Cal. Com. Code § 11101, et seq.

104.    On or about June 3, 2024, Plaintiffs provided oral notice to BoA's wire fraud department that the wire transfer from Plaintiffs to TRILOGY ESCROW had been compromised.

105.    Thereafter, BoA demanded that Plaintiffs provide BoA with a "hold harmless" letter, and Plaintiffs did so as requested.

106.    Plaintiffs are informed and believe and thereon allege that at the time of the notification to BoA, funds remained in the "Darby Law Firm Escrow" account which had received Plaintiffs' funds.

107.    BoA was required to investigate and to provide to Plaintiffs an explanation of its findings within three (3) days after the conclusion of its investigations and to deliver to or mail to Plaintiffs all documents which BoA relied on to conclude that such an error did not occur (if that was BoA's conclusion).  Plaintiffs are informed and believe and based thereon allege that BoA failed to timely comply with the foregoing.  Instead, BoA simply sent a letter to Plaintiffs advising that BoA was crediting Plaintiffs account in the amount of $497,467, without any explanation as to the basis for such credit or why the remaining balance of the original wire transfer was not also

being credited to Plaintiffs' account.  To date, in spite of requests for further information, BoA has provided no further information.

108.    Plaintiffs are informed and believe and based thereon allege that BoA willfully violated 15 USC §1693, et seq., and Cal. Com. Code § 11101, et seq.. The total extent of Plaintiffs' damages have not yet been ascertained, but are not less than $1,191,534, together with interest at the legal rate.

109.    Plaintiffs are entitled to recover their damages, including but limited to the amount of their lost funds ($1,191,534), out-of-pocket expenses, lost wages, and payment for emotional distress.  Plaintiffs are also entitled to treble damages against BoA.

110.    Pursuant to Bank Secrecy Act, 12 CFR 21.11, BANKS are obligated to file a suspicious activity report ("SAR"), when a bank becomes aware of potential violations of the law, with copies to federal law enforcement agencies as well as the Department of the Treasury.

111.    Banks are obligated to submit a SAR to FinCen (Financial Crimes Enforcement Network of the Department of the Treasury) whenever there is, inter alia: (a) insider abuse; (b) violations of law that exceed $25,000 whether or not suspects can be identified; and (c) potential money laundering transactions in excess of $5,000.

112.    The SAR is due within 30 days in certain circumstances, including when a suspect is known.

113.    The SAR should be submitted to state and local law enforcement as well.

114.    On information and belief, BoA failed to timely complete or submit any SAR related to the fraudulent transactions herein described.

115.    Plaintiffs are informed and believe and based thereon allege that because BoA failed to perform this legal duty, Plaintiffs were further harmed insofar as the suspects were able to avoid detection and dispose of ill-gotten gains because the applicable law enforcement agencies were not timely notified and thus took no timely action.

116.    Pursuant to 12 CFR 1005.11(c)(l ), after a financial institution receives oral or written notice of an error from a consumer, the financial institution must do all of the following:

    a)  Promptly investigate the oral or written allegation of error;

b) Complete its investigation within ten (10) business days;

c) Correct the error within one (1) business day after determining that an error has occurred; and

d) Report the results of its investigation within three (3) business days after completing its investigation.

117.    Plaintiffs were harmed by the failures and refusals of BoA to comply with 15 USC§1693(c), 12 CFR 1005.11(c)(1), and CA Com. Code § 11101 in an amount to be proven at trial but in no event less than the jurisdictional amount.

118.    15 USC §1693, et seq., and Cal. Com Code § 11101, et seq., provide that in the event of any successful action to enforce liability under these sections, the Plaintiffs are entitled to reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION
## AIDING AND ABETTING
### (Plaintiffs against BANK OF AMERICA)

119.    Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

120.    As set forth herein, the WIRE FRAUD DEFENDANTS set up a false and fraudulent account at BoA through which such unknown WIRE FRAUD DEFENDANTS were able to fraudulently receive funds meant for the escrow account set up for the subject real property purchase at issue herein.

121.    BoA had a duty to verify the identity of parties opening banking facilities with BoA and to not allow its banking facilities and services to be used by individuals using a fake business name to engage in fraudulent activities. Plaintiffs are informed and believe and thereon allege that in opening an account for "Darby Law Firm Escrow," Defendant BoA failed to act in compliance with the customer identification program for banks ("CIP"), 31 C.F.R. 1020.2020, colloquially known as "Know Your Customer" regulations.  On information and belief, BoA in fact failed to take the necessary and reasonable steps to verify the identity of the receiving party involved in this

1  fraudulent scheme, the alleged "Darby Law Firm Escrow" account, and the individuals behind

2  such fraudulent account.

3      122.    Plaintiffs are informed and believe and based thereon allege that Defendant BoA

4  knew or should have known of the fraudulent nature of the "Darby Law Firm Escrow" through the

5  use of proper verification procedures. Plaintiffs are informed and believe and based thereon allege

6  that Defendant BoA also knew or should have known of the fraudulent nature of the "Darby Law

7  Firm Escrow" based on the nature of the transactions being processed through such account.  In

8  fact, by not taking proper steps to verify the identity of an alleged law firm's "escrow" account,

9  Plaintiffs are informed and believe and based thereon allege that BoA knowingly aided and

10  abetted the fraud perpetrated by those behind such fraudulent account.

11      123.    In allowing the WIRE FRAUD DEFENDANTS to set up and use the "Darby Law

12  Firm Escrow" account BoA provided substantial assistance to the fraud perpetrated against the

13  Plaintiffs which, in fact, could not have occurred absent BoA's assistance.

14      124.    Plaintiffs are further informed and believe and based thereon allege that BoA

15  further failed to take the necessary and reasonable steps to freeze or otherwise retrieve the subject

16  funds transferred into the so-called "Darby Law Firm Escrow" account once BoA was expressly

17  put on notice of the fraudulent transactions being perpetrated by the actual owners of such

18  account.

19      125.    BoA's failures and breaches of duty substantially and proximately caused

20  Plaintiffs' damages by allowing the false and fraudulent "Darby Law Firm Escrow" account to be

21  used to fraudulently receive the funds transferred into such account and to thereafter dispose of

22  such funds. As such, BoA aided and abetted the true owners of the Darby Law Firm Escrow

23  account to defraud Plaintiffs.  BoA is therefore liable for the fraud perpetrated against Plaintiffs

24  jointly and severally with the WIRE FRAUD DEFENDANTS.

25

26                              **PRAYER**

27      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

28  follows:

1.      For actual damages in a sum according to proof;

2.      For general and consequential damages in a sum according to proof;

3.      For punitive or exemplary damages according to proof against those Defendants involved in the fraudulent/intentional misrepresentations as alleged herein;

4.      For treble damages according to statute against Bank of America;

5.      For restitution in a sum according to proof;

6.      For injunctive relief against Bank of America;

7.      For pre-judgment and post-judgment interest as allowed by law;

8.      For reasonable attorney's fees and costs of suit incurred herein, to the extent permitted by the parties' agreements and/or applicable law, including without limitation 15 USC §1693, et seq., and Cal. Com Code § 11101, et seq., as well as a "common fund" pursuant to Code Civil Procedure section 1021.5; and

9.      For such further relief as the Court deems just and proper.


DATED:  December 30, 2024          THE LAW OFFICES OF M. DANTON RICHARDSON


By:  _/s/ M. Danton Richardson_
        M. DANTON RICHARDSON
Attorneys for Plaintiffs,
XIAOYAN ZHOU and HUI CAO

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs XIAOYAN ZHOU and HUI CAO hereby demand a trial by jury.

3

4

DATED:  December 30, 2024          THE LAW OFFICES OF M. DANTON RICHARDSON

5

6

By: _/s/ M. Danton Richardson_

M. DANTON RICHARDSON

7

Attorneys for Plaintiffs,

XIAOYAN ZHOU and HUI CAO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/22)

**CALIFORNIA ASSOCIATION OF REALTORS®**

Date Prepared: _March 1, 2024_

**1. OFFER:**

   **A. THIS IS AN OFFER FROM** _Xiaoyan Zhou, Hui Cao_ ("Buyer").

   **B. THE PROPERTY** to be acquired is _18125 Hutchings Drive_ , situated
   in _Yorba Linda_ (City), _Orange_ (County), California, _92886_ (Zip Code),
   Assessor's Parcel No(s). _34372118_ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**

   **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**

   **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

   **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.

   Seller's Brokerage Firm _Reliance Real Estate Services_ License Number _01273093_
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   Seller's Agent _Teresa Rineer_ License Number _01264610_
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   Buyer's Brokerage Firm _Pinnacle Real Estate Group_ License Number _01918023_
   Is (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   Buyer's Agent _Muzi Zhou_ License Number _02104738_
   Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).

   **C.** More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

   **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

|   | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ _2,218,888.00_ | [X] All Cash |
| B |  | **Close of Escrow (COE)** | [X] _90_ Days after Acceptance OR on _____ (date) |  |
| C | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or ____ [ ] AM/ [ ] PM |  |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ _66,566.64_ ( _3.00_ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR [ ] |
| D(2) | 5A(2) | [ ] **Increased Deposit** **(Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.)** | $ _____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] |
| E(1) | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed ____ % • Buyer to pay up to ____ points to obtain the rate above / 17 (or ____) Days after Acceptance | Conventional or, if checked, [ ] FHA (Forms FVAC/HID attached) [ ] VA (Form FVAC attached) [ ] Seller Financing [ ] Other: _____ |
| E(2) | 5C(2) | **Additional Financed Amount** / Interest Rate / Points | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed ____ % • Buyer to pay up to ____ points to obtain rate above | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment |  |
| F | 5D | **Balance of Down Payment** | $ _2,152,321.36_ |  |
|   |   | **PURCHASE PRICE TOTAL** | $ _2,218,888.00_ |  |

© 2022, California Association of REALTORS®, Inc.

**RPA REVISED 12/22 (PAGE 1 OF 16)**

Buyer's Initials _xz_ / _HC_   Seller's Initials ____ / ____

**EXHIBIT A**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)

Authentisign ID: 558DF675-55D8-EE11-85F3-6045BDB68161

...ELA-DFM...Document 1...Filed 12/30/24...Page 31 of 59...Page ID
#...

Property Address: 18126 Hutchings Drive, Yorba Linda, CA 92886 Date: March 1, 2024

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit, if any, to Buyer** | ☐ $ _____ (____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | **ADDITIONAL FINANCE TERMS:** _____ | | | |
| G(3) | 18 | ☐ **Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement** (C.A.R. Form SPBB attached). Seller's Broker's offer, if any, to compensate Buyer's Broker is unaffected unless Otherwise Agreed. | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or ____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or ____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or ____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | | **Intentionally Left Blank** | |
| J | 16 | **Final Verification of Condition** | 5 (or ____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or ____) Days after Acceptance | |
| L | 8 | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or ____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or ____) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or _10_) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** Buyer's right to access the Property for informational access is **NOT** a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or ____) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein.  Removal or Waiver at time of offer is against Agent advice. See **paragraph 8H.** |
| L(4) | 8D, 14A | **Review of Seller Documents** | 17 (or _10_) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(5) | 8E, 13A | **Preliminary ("Title") Report** | 17 (or _10_) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 11L | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or _10_) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or ____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☐ CR-B attached |
| L(8) | 8J | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| M | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ ____ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below: ☐ ____ days after COE (29 or fewer days) ☐ ____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose to Buyer if occupied by tenants or persons other than the Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| N | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or ____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or ____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or ____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ____) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |

**RPA REVISED 12/22 (PAGE 2 OF 16)**     Buyer's Initials  _____ / _____     Seller's Initials _____ / _____ 

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

| | | | | |
|---|---|---|---|---|
| **O** | **Intentionally Left Blank** | | | |
| **P** | **Items Included and Excluded** | | | |
| **P(1)** | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** [X] Stove(s), oven(s), stove/oven combo(s); [X] Refrigerator(s); [ ] Wine Refrigerator(s); [X] Washer(s); [X] Dryer(s); [X] Dishwasher(s); [X] Microwave(s); [ ] Video doorbell(s); [ ] Security camera equipment; [ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment; [ ] Smart home control devices; [ ] Wall mounted brackets for video or audio equipment; [ ] Above-ground pool(s) / [ ] spa(s); [X] Bathroom mirrors, unless excluded below; [ ] Electric car charging systems and stations; [ ] Potted trees/shrubs; **Additional Items Included:** [ ] ____; [ ] ____; [ ] ____; [ ] ____; [ ] ____ | | |
| **P(2)** | | **Excluded Items:** [ ] ____; [ ] ____; [ ] ____; | | |
| **Q** | **Allocation of Costs** | | | |
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both ____ [X] Provided by: **MyNHD **Best Value*** | [ ] Environmental [ ] Other ____ |
| **Q(2)** | 10A | ____ | [ ] Buyer [ ] Seller [ ] Both ____ Provided by: ____ | |
| **Q(3)** | | ____ Report | [ ] Buyer [ ] Seller [ ] Both ____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both ____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | [ ] Buyer [ ] Seller [ ] Both ____ | |
| **Q(6)** | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | [ ] Buyer [ ] Seller [ ] Both ____ | |
| **Q(7)** | 19B | Escrow Fee | [ ] Buyer [ ] Seller [ ] Both ____ Escrow Holder: ____ | [X] Each to pay their own fees |
| **Q(8)** | 13 | Owner's title insurance policy | [X] Buyer [ ] Seller [ ] Both ____ Title Co. (If different from Escrow Holder): ____ | |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | [X] Buyer [ ] Seller [ ] Both ____ | |
| **Q(11)** | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both ____ | |
| **Q(12)** | 11L(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | [ ] Buyer [ ] Seller [ ] Both ____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both ____ | |
| **Q(16)** | | ____ fees or costs | [ ] Buyer [ ] Seller [ ] Both ____ | |
| **Q(17)** | | ____ fees or costs | [ ] Buyer [ ] Seller [ ] Both ____ | |
| **Q(18)** | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: ____ | [ ] Buyer [X] Seller [ ] Both ____ Issued by: *American Home Shield* [ ] Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *1,000.00*. |
| **R** | **OTHER TERMS:** ____ | | | |

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)     ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM)     ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)     ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)     ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other _____     ☐ Other _____

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)     ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)     ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
             (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)     ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)     ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO)     ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other _____     ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

(3) **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no Loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.

(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

(4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA REVISED 12/22 (PAGE 4 OF 16)     Buyer's Initials _XZ_ , _HC_     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     18125 Hutchings

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
(1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.
(2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.
(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
(3) [X] Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

**D. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A.**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

**E.   TITLE:**

(1)   This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

(2)   Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**G.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I.   REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1)   **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2)   For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3)   If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**

(1)   All EXISTING fixtures and fittings that are attached to the Property;

(2)   EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified in **paragraph 3P, if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.

(3)   Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

(4)   Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

(5)   Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

(6)   LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

RPA REVISED 12/22 (PAGE 6 OF 16)        Buyer's Initials   *XZ*   /  *HC*        Seller's Initials _____ / _____      

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       18125 Hutchings

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C.  ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A.  INSPECTIONS, REPORTS, TESTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA). Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B.  GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C.  HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.  TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

---



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

(4) **In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall,** in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

B. **LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

C. **HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

D. **DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

E. **WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

F. **RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(4)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11** A, B, C or D, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

G. **TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

H. **WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law and the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

I. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

J. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

K. **NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

L. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

---

**RPA REVISED 12/22 (PAGE 8 OF 16)**

Buyer's Initials  _____ , _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller may use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:
(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
(A) A general home inspection.
(B) An inspection for lead-based paint and other lead-based paint hazards.
(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
(D) Any other specific inspections of the physical condition of the land and improvements.
(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations include, but are not limited to, an investigation of the availability and cost of general homeowner's insurance, flood insurance and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

---

**RPA REVISED 12/22 (PAGE 9 OF 16)**

Buyer's Initials  XZ / HC   Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Authentisign ID: 558DF675-55D8-EF41-B5F8-9045BD058151

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 13A, 13C, and 28.**

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). However, if any report, disclosure, or information for which Seller is responsible is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G.**

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1).**

**C.** **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D.** **BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in this Agreement, or **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

---



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**



**E.** **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F.** **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G.** **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H.** **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15.** **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16.** **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17.** **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18.** **BROKERS AND AGENTS:**
   **A.** **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.
   **B.** **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**RPA REVISED 12/22 (PAGE 11 OF 16)**    Buyer's Initials ___ / ___    Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A or paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

D. Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within 1 Day after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

RPA REVISED 12/22 (PAGE 12 OF 16)       Buyer's Initials ___XZ___ / ___HC___       Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       18125 Hutchings

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.** **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **"Counting Days"** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver"**, **"Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33**.

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

RPA REVISED 12/22 (PAGE 13 OF 16)   Buyer's Initials  *XZ* / *HC*   Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

**28. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

---

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (G.A.R. FORM DID).**

Buyer's Initials ___X7___ / ___HC___        Seller's Initials _____ / _____

---

**30. MEDIATION:**
  **A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
  **B.** **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and **(iii)** Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

---

**31. ARBITRATION OF DISPUTES:**
  **A.** The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
  **B.** **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: **(i)** Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; **(ii)** an unlawful detainer action; and **(iii)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
  **C.** **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: **(i)** the filing of a court action to preserve a statute of limitations; **(ii)** the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or **(iii)** the filing of a mechanic's lien.
  **D.** **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
  **E.** **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

  **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ___X7___ / ___HC___        Seller's Initials _____ / _____

---

**RPA REVISED 12/22 (PAGE 14 OF 16)**    Buyer's Initials  ___X7___ / ___HC___    Seller's Initials _____ / _____    

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    18125 Hutchings

**32. BUYER'S OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

    (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

    (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____ _____ _____.

**C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**

(Signature) By, *Xiaoyan Zhou*                        **Date:** 03/02/2024

    Printed name of BUYER: *Xiaoyan  Zhou*

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, *Hui Cao*                             **Date:** 03/02/2024

    Printed name of BUYER: *Hui Cao*

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer. **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

    ☐ Seller Counter Offer (C.A.R. Form SCO or SMCO)

    ☐ Back-Up Offer Addendum (C.A.R. Form BUO)

**B.** ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

    (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

    (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____ _____ _____.

**C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By, _____ **Date:** _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ **Date:** _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)

            Seller's Initials

---

**RPA REVISED 12/22 (PAGE 15 OF 16)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Property Address: *18125 Hutchings Drive, Yorba Linda, CA 92886*    Date: *March 1, 2024*

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm *Pinnacle Real Estate Group* _____ Lic. # *01918023*
      By _____ *Muzi Zhou* Lic. # *02104738* _____ Date 03/02/2024
      By _____ Lic. # _____ Date _____
      Address *2633 S. Baldwin Ave.* _____ City *Arcadia* _____ State *CA* Zip *91007*
      Email *kiko222zhou@gmail.com* _____ Phone # _____
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es) (Check all that apply):**
      ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

   B. Seller's Brokerage Firm *Reliance Real Estate Services* _____ Lic. # *01273093*
      By _____ *Teresa Rineer* Lic. # *01264610* _____ Date _____
      By _____ Lic. # _____ Date _____
      Address _____ City _____ State ____ Zip _____
      Email _____ Phone # _____
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent) (Check all that apply):**
      ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
               Agent or Seller Initials

Buyer's Initials *XZ* / *HC*    Seller's Initials _____ / _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RPA REVISED 12/22 (PAGE 16 OF 16)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**



# EXHIBIT B

# DEMAND TO CLOSE ESCROW
**(C.A.R. Form DCE, Revised 12/21)**

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other _____ ("**Agreement**"),
dated ___03/05/2024___ , on property known as ___18125 Hutchings Dr, Yorba Linda, Ca 92886___ ("**Property**"),
between ___Xiaoyan Zhou, Hui Cao___ ("**Buyer**"),
and ___The Bashara Family Trust___ ("**Seller**")
with an agreed upon Close Of Escrow date of ___06/03/2024___ . Buyer and Seller are referred to as the "**Parties**."

**1.** **Seller hereby demands that Buyer close escrow on the Property:**

   **A.** ☒ Within **3 (or** ☐ _____ **(but no less than 3 Days as specified in the Agreement)) Days** after Delivery of this Demand To Close Escrow but no earlier than the agreed upon Close Of Escrow date.

   **OR B.** ☐ By _____ (Date), which is at least **3 Days** after Delivery of this Demand to Close Escrow but no earlier than the agreed upon Close Of Escrow date.

**Note To Buyer: If** you do not close escrow by the end of the time period specified in this Demand to Close Escrow, and Seller has fully performed, Seller may **(i)** immediately cancel the Agreement; **(ii)** bring legal action against you for damages (including but not limited to the deposit); or **(iii)** bring legal action against you to force you to buy the Property (specific performance).

| | |
|---|---|
| DocuSigned by:<br>_Dean Bashara_<br>16535D4E3CED45C... | 6/18/2024 |
| **Seller** _The Bashara Family Trust_ | **Date** |
| | |
| **Seller** | **Date** |

**2.** **Buyer hereby demands that Seller close escrow on the Property:**

   **A.** ☐ Within **3 (or** ☐ _____ **(but no less than 3 Days as specified in the Agreement)) Days** after Delivery of this Demand To Close Escrow, but no earlier than the agreed upon Close Of Escrow date.

   **OR B.** ☐ By _____ (Date), which is at least **3 Days** after Delivery of this Demand to Close Escrow but no earlier than the agreed upon Close Of Escrow date.

**Note To Seller: If** you do not close escrow by the end of the time period specified in this Demand to Close Escrow, and Buyer has fully performed, Buyer may **(i)** bring legal action against you for damages because of your breach of contract, **(ii)** bring legal action against you to force you to sell the Property (specific performance), or **(iii)** both.

| | |
|---|---|
| **Buyer** | **Date** |
| | |
| **Buyer** | **Date** |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

| R E B S | Published and Distributed by:<br>REAL ESTATE BUSINESS SERVICES, LLC.<br>*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*<br>525 South Virgil Avenue, Los Angeles, California 90020 | **EXHIBIT B** |  |
|---|---|---|---|

**DCE REVISED 12/21 (PAGE 1 OF 1)**

## DEMAND TO CLOSE ESCROW (DCE PAGE 1 OF 1)

# EXHIBIT C

# Law Offices of
# M. Danton Richardson

131 N. El Molino, Suite 310, Pasadena, CA  91101 | (949) 677-6434 | dantonlaw@yahoo.com

June 21, 2024

Teresa Rineer                                          Via Email Only: treebranch50@gmail.com
**Reliance Real Estate Services**
1431 N Harbor Blvd.
Fullerton, CA, 92835

Janelle Cowan, Escrow Officer                          Via Email Only: janelle@trilogyescrow.com
Trilogy Escrow
7965 Vineyard Ave. #F2
Rancho Cucamonga, CA 91730

        Re:      <u>**The Bashara Family Trust -**</u> <u>**18125 Hutchings Yorba Linda CA 92886**</u>
               **Escrow No. 25-5560-JC**

Dear Ms. Rineer and Ms. Cowan:

      I have been retained as counsel to Xiaoyan Zhou, one of the buyers in the above-referenced transaction.  Ms. Rineer's Demand to Close Escrow dated June 18, 2024, has been referred to me for response.

      Please be advised that Buyers are prepared to close and must insist that title be transferred to the Buyers as agreed pursuant to the Residential Purchase Agreement dated March 5, 2024.  While I am new to this matter, it is my understanding that the Buyers had previously and timely deposited the funds necessary to close this transaction - $2,218,888.00 - per instructions received from the Seller's designated escrow agent, Trilogy Escrow (Janelle Cowan, Escrow Officer).

      The Buyers were subsequently advised by Trilogy Escrow that some of the funds were not received, and Buyers have undertaken efforts through the transferring banks to re-call those funds. Unfortunately, the Buyers have only been able to retrieve the sum of $497,467.00.  Buyers are prepared to re-tender this amount to Escrow as soon as Seller confirms Seller is prepared to and will transfer title to the Buyer upon the deposit of such funds.  Please confirm Seller is prepared to do so and also please provide confirmation of the deposit instructions from Seller's Escrow Agent given the issues that occurred regarding the previous instructions.

      I would further note that it appears that the "misdirection" of funds occurred due to unauthorized instructions being issued through Ms. Cowan's Trilogy Escrow email.  Nonetheless, given the instructions came from the Seller's Escrow Agent and the funds were deposited pursuant to those instructions, it is Buyer's position that Buyers have properly tendered the funds necessary to close this transaction.  As a courtesy, Buyers have undertaken efforts to recall the transferred funds.

EXHIBIT C

Teresa Rineer
Janelle Cowan
June 21, 2024
Page No. 2

Buyers will continue to cooperate in that regard as the Buyers do not wish the Sellers to suffer any loss. However, all rights are reserved and, given the fact that the Buyers have fully complied with instructions received from the Seller's Escrow Agent, Buyers have satisfied their obligations under the Residential Purchase Agreement and are due the transfer of title as provided therein.

Accordingly, to confirm, Buyers are in agreement that the transaction should be closed and title to the subject property should be transferred to the Buyers. The Buyers stands ready to close this transaction as soon as Seller confirms Seller is prepared to transfer title as addressed above.

In conclusion, please note that any efforts to purportedly cancel this transaction would be improper and will force the Buyers to take appropriate legal action to preserve and enforce their rights.

Sincerely,

M. Danton Richardson

cc:     Xiaoyan Zhou (mariazhouxy@gmail.com)
        Muzi Zhou (kiko222zhou@gmail.com)

# EXHIBIT D



## CANCELLATION OF CONTRACT, DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW

**(C.A.R. Form CC, Revised 6/24)**

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other _____
_____ ("Agreement"), dated _03/05/2024_ , including all amendments and related documents, on property known as _____18125 Hutchings Dr, Yorba Linda, Ca 92886_____ ("Property"), between _____ _Xiaoyan Zhou, Hui Cao_ _____ ("Buyer") and _____ _The Bashara Family Trust_ _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

**ADVISORY AND INSTRUCTIONS:** The Party cancelling the Agreement is required to act in good faith. Disputes over cancellation and deposit can be complex legal issues and can be expensive to resolve. **Agents are not qualified to provide any opinion on who is entitled to the deposited funds or whether a cancellation was made in good faith. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

The party cancelling the Agreement, and not the Agent, needs to determine if a cancellation right applies. Cancellation must be exercised in good faith and in accordance with the rights and procedures within the Agreement, including any applicable Notice to Perform or Demand to Close Escrow. Section 1 allows for either a one-party cancellation (see **paragraph 1A**), or for a proposed mutual cancellation which becomes effective upon a mutual execution of Section 2 (see **paragraph 1B**).

If there is an open escrow, Escrow Holder will need mutual agreement and instructions from both Parties regarding the deposit and cancelling of escrow. If the Parties agree on the release of the deposit, then the Parties can exercise a mutual instruction with full release in **paragraph 2C** below. If the Parties are cancelling the Agreement but are disputing the deposit, then the Partial Release section can be used in **paragraph 2D**.

Parties are advised to consult with a qualified California real estate attorney regarding potential damages and remedies, including, but not limited to, retaining the deposit, seeking other monetary damages, and pursuing specific performance. Any dispute will have to be resolved in the manner specified in the Agreement.

---

**Both paragraphs 1 and 2 are escrow instructions to Escrow Holder. Cancellation under paragraph 1A, requires the signature of either Buyer or Seller, but not both. Paragraphs 1B and 2 require the signatures of both parties to be effective.**

1. **CANCELLATION OF CONTRACT:**
   A. **One-party cancellation: This paragraph is used to cancel the Agreement by Buyer or Seller. Its terms apply whether or not both Parties agree to disposition of the deposit and cancellation of escrow in paragraph 2 below.**
      The ☐ Buyer or ☒ Seller Signing below cancel(s) the Agreement for the following reason:
      (1) ☐ As permitted by the good faith exercise of paragraph(s) _____ of the Agreement.
      (2) ☐ Buyer has failed to remove the applicable contingency or take the applicable contractual action after being given a Notice to Buyer to Perform (C.A.R. Form NBP).
      (3) ☐ Seller has failed to remove the applicable contingency or take the applicable contractual action after being given a Notice to Seller to Perform (C.A.R. Form NSP).
      (4) ☐ The other Party has failed to close escrow after being given a Demand to Close Escrow (C.A.R. Form DCE).
      (5) ☒ Other _____.
   B. ☐ **Proposed mutual cancellation:** The Buyer or Seller Signing below proposes a mutual cancellation of the Agreement. The cancellation is only effective if agreement is reached and both Parties Sign in **paragraph 2** below as follows. This Proposed mutual cancellation **(i)** may be withdrawn by the Party initiating it any time prior to agreement by the other party in **paragraph 2** below, and **(ii)** shall be deemed revoked unless by 5:00 PM on the third Day after it is Signed by the initiating Party in **paragraph 1** (or by _____ ☐AM/☐ PM on _____ date) it is Signed by the other Party in **paragraph 2** and a Copy of this completed form is Delivered to the initiating Party.

_Docusigned by:_
_Dean Bedla_                                                                              7/25/2024
_____         _____
Buyer's or Seller's Signature (party cancelling the contract)           Date

_____         _____
Buyer's or Seller's Signature (party cancelling the contract)           Date

## ***SIGN IN THIS SECTION SOLELY FOR CANCELLATION OF CONTRACT. PROCEED TO PAGE 2 FOR DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW.***

© 2024, California Association of REALTORS®, Inc.

**EXHIBIT D**

**CC REVISED 6/24 (PAGE 1 OF 2)**

**CANCELLATION OF CONTRACT, DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW (CC PAGE 1 OF 2)**

2.  **DISPOSITION OF DEPOSIT and CANCELLATION OF ESCROW**

   A.  **PURPOSE OF PARAGRAPH 2:** This paragraph is used to instruct Escrow Holder **(i)** to cancel the escrow for the **purchase/sale or other designated transaction for the Property and (ii) what to do with the deposit. Any cancellation of contract pursuant to paragraph 1A, remains in effect even if both Parties to the Agreement do not sign below.**

   B.  **RELEASE OF FUNDS NOT AUTOMATIC:** Release of funds by Escrow Holder (pursuant to paragraph 2) requires mutually Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

   C.  **FULL RELEASE AND DISPOSITION OF DEPOSIT (Select one of the options in C, or complete D, but not both.):** Buyer and Seller cancel escrow # _____*5560-JC*_____ with _____*Trilogy Escrow*_____ . The parties **(i)** mutually release each other from any obligation to buy, sell or exchange the Property under the Agreement; **(ii)** mutually release each other from all other claims, actions and demands that each may have against the other(s) by reason of the Agreement; and **(iii)** intend that all other rights and obligations arising out of the Agreement are null and void.

   (1)  [X] Seller authorizes release of Buyer's deposit to Buyer, less Buyer's fees and costs **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). [ ] If checked, Seller agrees to pay for Buyer out-of-pocket expenses for inspection reports and appraisal fees as specified in the Agreement. Buyer shall Deliver receipts for such expenses to Escrow Holder.

   OR (2)  [ ] Buyer authorizes release of Buyer's deposit to Seller, less Seller's fees and costs **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). Pursuant to a properly executed liquidated damages clause, Buyer's authorization of release of deposit to Seller is limited to no more than 3% of the purchase price, if the Property is a dwelling with no more than four units, one of which Buyer intended to occupy. Any additional deposit shall be returned to Buyer.

   OR (3)  [ ] Buyer authorizes release of $_____ from Buyer's deposit to Seller. The balance to be returned to Buyer. Each Party to pay for their own unpaid contractual fees and costs **(i)** already incurred and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). Such fees and costs shall be deducted from the amount specified above.

   OR (4)  [ ] There is no deposit in escrow. Each Party to pay for their own unpaid contractual fees and costs, if any, **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee).

   D.  [ ] **PARTIAL RELEASE AND RESERVATION OF RIGHTS:** Buyer and Seller cancel escrow # _____ with _____ The Parties:

   (1)  Mutually release each other from any obligation to buy, sell or exchange the Property under the Agreement;

   (2)  Reserve all rights and retain any obligations they have toward each other under the Agreement, except for the obligation, as applicable, to buy, sell, or exchange the Property; and

   (3)  Authorize Escrow Holder or [ ] _____ to hold any deposit until receiving subsequent mutual instructions, judicial decision or arbitration award, or [ ] there is no deposit in escrow.

| | | | |
|---|---|---|---|
| Buyer | *Xiaojian Zhou* (signed) | DocuSigned by: *Xiaoyan Zhou* | Date 7/29/2024 |
| Buyer | | DocuSigned by: *Hui Cao* — 1E3FA1E2FA0542B... | Date 7/29/2024 |
| Seller | *Dean & Bashara* (signed) | DocuSigned by: *The Bashara Family Trust* — 16535D4E3CED45C... | Date 7/25/2024 |
| Seller | | | Date _____ |

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.



Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**CC REVISED 6/24 (PAGE 2 OF 2)**

**CANCELLATION OF CONTRACT, DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW (CC PAGE 2 OF 2)**

**ADDENDUM TO CANCELLATION OF CONTRACT,**

**RELEASE OF DEPOSIT**

**AND CANCELLATION OF ESCROW REGARDING**

**18125 HUTCHINGS DR., YORBA LINDA, CA 92886**

WHEREAS, SELLER, The Bashara Family Trust, has sought to cancel that Residential Purchase Agreement (the "Purchase Agreement") entered into with BUYERS, Xiaoyan Zhou and Hui Cao, dated March 4, 2024, due to there being a shortage in the funds deposited with Trilogy Escrow to close the transaction;

WHEREAS, SELLER has been represented by Reliance Real Estate Services and agent Teresa Rineer and BUYERS have been represented by Pinnacle Real Estate Group and agent Muzi Zhou regarding the Purchase Agreement;

WHEREAS, it has been discovered that the shortage in funds is the result of wire fraud resulting in funds being diverted and not deposited with Trilogy Escrow;

WHEREAS, BUYERS are willing to accept SELLERS' cancellation of the Purchase Agreement so as not to further delay SELLER from being able to sell the subject property provided (1) all funds deposited into Trilogy Escrow regarding this transaction totaling $545,649.64 are immediately returned to BUYERS, (2) SELLER and its agent agreeing to cooperate as needed in any efforts to recover the missing funds, and (3) further conditioned upon BUYERS reserving any and all rights to pursue the missing funds and those responsible;

NOW, THEREFORE, the parties agree and acknowledge as follows:

SELLER and BUYERS will execute C.A.R. Form CC "CANCELLATION OF CONTRACT,

RELEASE OF DEPOSIT AND CANCELLATION OF ESCROW" (the "Cancellation Form").

The parties signing this Addendum acknowledge and agree that BUYERS signing of the Cancellation Form and agreeing to cancel the subject transaction is without prejudice and shall not constitute a waiver of any of BUYERS' rights, other than as provided in the Cancellation Form between SELLER and BUYERS, and that BUYERS are expressly reserving any and all other rights including the right to pursue the missing funds and any parties responsible for such loss.

1

SELLER and its agent hereby agree to cooperate if and as needed in BUYERS' efforts to recover the missing funds.

_Deana Bedla_ 7/29/2024

SELLER

BUYERS

Reliance Real Estate Services
By: _Jason Randell_ 7/29/2024

Teresa Rineer _Teresa Rineer_

7/29/2024

Pinnacle Real Estate Group
By:

Muzi Zhou

Trilogy Escrow
By:

Janelle Cowan

SELLER and its agent hereby agree to cooperate if and as needed in BUYERS' efforts to recover the missing funds.

| | DocuSigned by: |
|---|---|
| | Hui Cao                    7/29/2024 |
| _____ | 1E3FA1E2FA0942B... |
| SELLER | DocuSigned by: |
| | Xiaoqian Zhou                    7/29/2024 |
| | EC350842BD7740B... |
| | BUYERS |

_____                _____
Reliance Real Estate Services            Teresa Rineer
By: _____

_____                _____
Pinnacle Real Estate Group               Muzi Zhou
By: _____

_____                _____
Trilogy Escrow                           Janelle Cowan
By: _____

2

# EXHIBIT E

Authentisign ID: E99CE675-55D8-EE11-85F3-6045BDD68181



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| | | | | | |
|---|---|---|---|---|---|
| ☒ Buyer | ☐ Seller | ☐ Landlord | ☐ Tenant | *Xiaoyan Zhou* | **Xiaoyan Zhou** Date 03/02/2024 |
| ☒ Buyer | ☐ Seller | ☐ Landlord | ☐ Tenant | *Hui Cao* | **Hui Cao** Date 03/02/2024 |

Agent    **Pinnacle Real Estate Group**         DRE Lic. # **01918023**
            Real Estate Broker (Firm)

By    _____         **Muzi Zhou** DRE Lic. # **02104738**     Date 03/02/2024
            (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**EXHIBIT E**

**AD REVISED 12/21 (PAGE 1 OF 2)**



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

[REL S LC] Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/21 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)